# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**UNITED STATES OF AMERICA,**

    Plaintiff,

**v.**                                                  **CRIMINAL NO. 3:09-CR-52**
                                                                       **(Judge Bailey)**

**JASON LLOYD YAIDER,**

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

### I.    Introduction

This matter is now before the Court for consideration of the Defendant Yaider's Motion to Dismiss Indictment [Doc. 10], filed on August 28, 2009, and the Government's response thereto [Doc. 14]. For the reasons set forth in this opinion, the motion **[Doc. 10]** is **DENIED**.

### II.    Factual and Procedural History

On November 27, 2006, Defendant Yaider pled no contest to one charge of misdemeanor domestic battery, in violation of W. Va. Code § 61-2-28(a), for "unlawfully and intentionally mak[ing] physical contact of an insulting or provoking nature with... his wife, Renee Yaider," and was sentenced to five (5) months in jail, suspended for one year of probation.

The instant counts against Defendant Yaider contend that Mr. Yaider was a prohibited person, by virtue of his misdemeanor conviction, when he possessed four

1

firearms that were sold to a pawnshop on December 12, 2008, January 9, 2009, and February 21, 2009, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). Defendant Yaider asserts that the statute of his West Virginia misdemeanor conviction, under the categorical approach of statutory interpretation, does not have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon as required to support a charge pursuant to 18 U.S.C. § 922(g)(9).

III.     Applicable Law

Section 922(g)(9) makes it "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence" to possess "any firearm or ammunition" that has been in or affects interstate commerce. 18 U.S.C. § 922(g)(9). The term "misdemeanor crime of domestic violence" is defined to include an offense that "(i) is a misdemeanor under . . . State . . . law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse . . . ." 18 U.S.C. § 921(a)(33)(A). Therefore, to qualify as a "misdemeanor crime of domestic violence," the West Virginia statute under which Defendant Yaider was convicted, W. Va. Code § 61-2-28(a), must "have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon . . . ."

IV.     Discussion

Defendant Yaider's primary contention is that the West Virginia statute under which he was convicted in 2006 does not satisfy the second part of that definition-that it does not have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon . . . ." The question at issue is not whether the actual conduct that led to Yaider's prior conviction involved physical force or worse. If that were the question, this

2

would be a simpler case. We know from the state court records that Yaider was convicted of "unlawfully and intentionally mak[ing] contact of an insulting or provoking nature with his family member, his wife, Renee Yaider . . . (by) grabbing (her) by the shirt and () shoving her."

The definition of § 921(a)(33)(A)(ii), however, does not turn on the actual conduct underlying the conviction but on the elements of the state crime. See 18 U.S.C. § 921(a)(33)(A)(ii); **United States v. Shelton**, 325 F.3d 553, 558 n. 5 (5th Cir. 2003) (declining to consider in applying § 922(g)(9) the defendant's admission that he used physical force during the assault, because the court "look[s] to the elements set forth in the statute-not the actual conduct to determine whether the offense qualifies as a crime of domestic violence"); **United States v. Smith**, 171 F.3d 617, 620-21 (8th Cir. 1999) (holding that in applying § 922(g)(9) "we must look only to the predicate offense rather than to the defendant's underlying acts" and "[w]e may expand our inquiry under this categorical approach to review the charging papers and jury instructions, if applicable, only to determine under which portion of the assault statute (the defendant) was convicted"); see also **Taylor v. United States**, 495 U.S. 575, 600, 110 S.Ct. 2143, 2159 (1990) (in applying the 18 U.S.C. § 924(e) term "violent felony" courts may look only to the statutory definitions of the prior offense).

This question has not been addressed in the Fourth Circuit. Upon conducting a review of the existing case law amongst the circuits, it becomes apparent that the Government's position is supported by the decisions of the First, Eighth and Eleventh Circuits. See **United States v. Nason**, 269 F.3d 10, 20-21 (1st Cir. 2001) (holding that a

state statute criminalizing "offensive physical contact" requires the use of "physical force" so that a violation of it qualifies as a crime of domestic violence for § 922(g)(9) purposes); ***United States v. Smith***, 171 F.3d 617, 621 n. 2 (8th Cir. 1999) (concluding that a state statute which contains "insulting or offensive physical contact" as an element requires the use of physical force so that a violation of it qualifies as a crime of domestic violence under § 922(g)(9)); ***United States of America v. Griffith***, 455 F.3d 1339, 1340-41 (11th Cir. 2006).

In ***Griffith***, the Eleventh Circuit Court of Appeals applied this analysis to Georgia's simple battery statute, which provides that: "[a] person commits the offense of simple battery when he or she . . .: (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another . . .." Ga. Code Ann. § 16-5-23(a)(1). Applying the "categorical," or element-by-element approach, the Court looked to whether the crime defined by that statute required, "as an element, the use or attempted use of physical force." *Id*. at 1341. The Court determined that, "[i]f 'physical contact of an insulting or provoking nature,' as described in the Georgia statute, necessarily involves 'physical force,' a conviction in the courts of that state for simple battery is enough to satisfy the requirements of § 922(g)(9); if not, then not." *Id*.

On Yaider's side of the issue are the Ninth and Seventh Circuits. *See* ***United States v. Belless***, 338 F.3d 1063, 1067-68 (9th Cir. 2003) (concluding that a statute criminalizing rude, angry or insolent "unlawful touching" does not require "physical force" sufficient to satisfy § 922(g)(9)); *see also* ***Flores v. Ashcroft***, 350 F.3d 666, 669-70 (7th Cir. 2003) (interpreting a similar provision of the Immigration and Naturalization Act that requires an

4

underlying offense to have as an element the use of physical force, and concluding that intentional touching that results in bodily injury does not necessarily involve physical force).

"In interpreting a statute we look first to the plain meaning of its words." **United States v. Maung**, 267 F.3d 1113, 1121 (11th Cir. 2001). In this case, the key words in the § 921(a)(33)(A)(ii) definition are "physical force." The plain meaning of "physical force" is "[p]ower, violence, or pressure directed against a person" "consisting in a physical act." *See Black's Law Dictionary* 673 (8th Ed. 1999); **Nason**, 269 F.3d at 16.

The West Virginia statute has as an element "contact of an insulting or provoking nature." W.Va. Code Ann. § 61-2-28(a). "A person cannot make physical contact-particularly of an insulting or provoking nature-with another without exerting some level of physical force. *See* **Smith**, 171 F.3d at 621 n. 2 ('physical contact, by necessity, requires physical force to complete'); *see also* **Nason**, 269 F.3d at 16 (holding that a statute criminalizing 'offensive physical contact' satisfies § 922(g)(9)'s physical force requirement and noting that because the definition of physical force produces 'an entirely plausible result,' the plain language controls)." **Griffith**, at 1341. Therefore, it follows that under the plain meaning rule, the "contact of an insulting or provoking nature" contemplated by the West Virginia battery statute satisfies the "physical force" requirement of § 921(a)(33)(A)(ii), which is defined into § 921(g)(9).

In reaching the same result, the Eleventh Circuit analyzed the application of the plain meaning rule to Section 922(g)(8)(C)(ii), which immediately precedes § 922(g)(9). *See* **Griffith**, at 1342. That section restricts firearm possession by anyone subject to a court order that prohibits the "'use, attempted use, or threatened use of physical force . . . that

5

would reasonably be expected to cause bodily injury.' 18 U.S.C. § 922(g)(8)(C)(ii)" *Id*.

The Supreme Court has held that "[i]t is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." ***Duncan v. Walker***, 533 U.S. 167, 173, 121 S.Ct. 2120, 2125 (2001) (internal citation omitted). The Eleventh Circuit illustrated that "the significance of the limiting language narrowing the scope of that provision to force 'that would reasonably be expected to cause bodily injury' is that Congress put the limitation into the last subsection that precedes § 922(g)(9), but not into § 922(g)(9) itself or into the definition of 'crime of domestic violence' that is contained in § 921(a)(33)(A)(ii)." *Id*. Drawing its conclusion from this language, the ***Griffith*** Court reasoned that:

> "[i]f Congress had wanted to limit the physical force requirement in § 922(g)(9), it could have done so, as it did in the last clause of the preceding paragraph of the same subsection, see § 922(g)(8)(C)(ii), and with the same limiting language or something similar to it, but that is not what Congress did. That it did not speaks loudly and clearly. See ***Nason***, 269 F.3d at 16-17 (reasoning that the omission of the narrowing language from § 922(g)(9) is 'a clear signal of Congress's intent' to include within the ambit of § 922(g)(9) misdemeanor crimes those 'involving all types of physical force, regardless of whether they could reasonably be expected to cause bodily injury.'); *see generally **Burlington N. & Sante Fe Ry. Co. v. White***, --- U.S. ----, 126 S.Ct. 2405, 2412 (2006) ('We normally presume that, where words differ as they

6

differ here, "Congress acts intentionally and purposely in the disparate inclusion or exclusion."') (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296 (1983))."

*Id*. (citations omitted).

In this case, Defendant Yaider relies heavily on the Ninth Circuit's decision in *Belless* and on the Seventh Circuit's decision in *Flores*. (Citations omitted). In *Belless*, 338 F.3d at 1067, the defendant was convicted under a Wyoming battery statute that criminalizes "unlawfully touch[ing] another in a rude, insolent or angry manner or intentionally, knowingly or recklessly caus[ing] bodily injury to another." (quoting Wyo. Stat. Ann. § 62501(b)). Characterizing that statute as a "law against rude touchings," the Ninth Circuit concluded that this violation did not qualify as a crime of violence for § 922(g)(9) purposes, because it did not have as an element the use or attempted use of physical force. *Id.* at 1068. The Court reasoned that the "physical force" requirement in the statute at issue could not possibly include "any touching" in the "sense of Newtonian mechanics" and held that the physical force requirement could not be satisfied by "*de minimis*" touching. *Id*. at 1067-68. That Court concluded that "the associated phrase (contained in § 922(g)(9) includes) 'threatened use of a deadly weapon' . . . is a gravely serious threat to apply physical force." *Id*. at 1068. Because the Wyoming statute at issue in *Belless* "criminalizes conduct that is minimally forcible, though ungentlemanly," the Ninth Circuit concluded that the statute did not have as an element the "physical force" required under § 922(g)(9). *Id*. In so holding, the Ninth Circuit correctly noted, although contradicting its ultimate conclusion, that § 922(g)(9) requires "violent use of force against the body of

7

another." See *Id*.

In distinguishing the *Belless* case, the Eleventh Circuit recognized this contradiction, stating that:

> "[t]o the extent the reasoning in *Belless* would extend to the 'physical contact' element of the Georgia statute at issue in this case, we disagree with it. The fact that Congress included in the § 921(a)(33)(A)(ii) definition language to cover statutes that have as an element 'the threatened use of a deadly weapon,' even when no physical force is attempted or used, does not justify the conclusion that the use of physical force alone is not enough to come within § 922(g)(9). The statutory language specifies that either 'the use or attempted use of physical force, or the threatened use of a deadly weapon' is enough. Specifying that either 'A or B' is enough means A alone is enough. It does not mean that A is enough only if it shares some additional characteristic with B. See *S.D. Warren Co. v. Me. Bd. of Envtl. Prot.,* — U.S. ----, 126 S.Ct. 1843, 1849 (2006) ('The argument seems to assume that pairing a broad statutory term with a narrow one shrinks the broad one, but there is no such general usage . . ..'). We know from the language it included in § 922(g)(8)(C)(ii) (requiring 'physical force . . . that would reasonably be expected to cause bodily injury') that Congress knew how to require more than simple 'physical force' if it had wanted to do so. The legislative branch does not require the help of the judicial branch for that simple drafting task. Reaching the *Belless* result in this case would alter the scope of § 922(g)(9)

8

by effectively inserting the word 'violent' into the operative definition contained in § 921(a)(33)(A)(ii)."

***Griffith***, at 1343-1345 (stating that "modification may be an appealing improvement in some eyes, but we are not licensed to practice statutory remodeling" and that "it is (not) the function of courts to assign criminal responsibility.") (Citations omitted).

The ***Griffith*** Court gave similar scrutiny to the Seventh Circuit's § 922(g)(9) application to the Indiana battery statute, which provides that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, that offense is: (1) a Class A misdemeanor if: (A) it results in bodily injury to any other person." Ind. Code § 35-42-2-1. *See* ***Flores v. Ashcroft***, 350 F.3d 666 (7th Cir. 2003). In ***Flores***, the Court noted that the Indiana courts had construed their battery statute to apply to situations in which the defendant had only touched a person's glasses or merely bruised a person. ***Id***. at 670 (finding that "[a]ny contact counts as a 'touch'-and this includes indirect as well as direct contact, so a snowball, spitball, or paper airplane qualifies if it hits the target."). The ***Flores*** Court continued: "[I]f the paper airplane inflicts a paper cut, the snowball causes a yelp of pain, or a squeeze of the arm causes a bruise, the aggressor has committed a Class A misdemeanor (provided that the act was rude, angry, or insolent). It is hard to describe any of this as 'violence.' " ***Id***. The Court further acknowledged that any contact requires force: "Every battery entails a touch, and it is impossible to touch someone without applying some force, if only a smidgeon." ***Id***. at 672. It then concluded that "[t]o avoid collapsing the

9

distinction between violent and non-violent offenses, we must treat the word 'force' as having a meaning in the legal community that differs from its meaning in the physics community. The way to do this is to insist that the force be violent in nature-the sort that is intended to cause bodily injury . . .." *Id*.

In *Griffith*, the Court explained the flawed logic of this analysis:

"The court reasoned that the elements of Flores' offense constituted only 'physical contact' and not physical force. Because the 'elements rather than the real activities are dispositive,' the court held that the element of physical force was not satisfied. The *Flores* court seemed to acknowledge the academic nature of its reasoning, at least as applied to the facts of that case. It conceded: 'Now Flores did not tickle his wife with a feather during a domestic quarrel, causing her to stumble and bruise her arm. That would not have led to a prosecution, let alone to a year's imprisonment. The police report shows that Flores attacked and beat his wife even though prior violence had led to an order barring him from having any contact with her.' The concurring opinion in *Flores* noted that 'the result we reach, though correct on the law, is divorced from common sense. For one thing, people don't get charged criminally for expending a newton of force against victims. Flores actually beat his wife-after violating a restraining order based on at least one prior beating-and got a one-year prison sentence for doing so . . .. I do not applaud the result we reach.' *Flores*, at 672-73 (Evans, J., concurring)."

*Griffith*, at 1344-45 (internal citations omitted).

In declining to reach the same conclusion as the Seventh Circuit in *Flores*, the *Griffith* Court stated that "we do not feel compelled to reach a result at war with common sense, particularly when doing so would require us to alter the plain language of what Congress has written." (Stating that "[l]ike the Ninth Circuit in *Belless*, the Seventh Circuit in *Flores* has essentially read into a statutory definition a word that is not there-inserting 'violent' before the words 'physical force.'").

For the same reasons, this Court will adopt the reasoning of the *Griffith* Court and the similar conclusions of the First and Eighth Circuits. To quote the Eleventh Circuit, "[w]e will stick to the common sense approach and result where we can, and here we can." *Griffith*, at 1345.

V. Conclusion

Accordingly, based upon the foregoing, it is the opinion of this Court that Defendant Yaider's Motion to Dismiss Indictment **[Doc. 10]**, should be, and the same is, hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: September 15, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE